IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GGNSC OMAHA OAK GROVE, LLC d/b/a GOLDEN LIVINGCENTER OF SORENSEN, <br><br>            Plaintiff,<br><br>vs.<br><br>IVAN PAYICH, as Special Administrator for the Estate of NADA PAYICH,<br><br>            Defendant. | 4:12CV3040<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the motion to compel arbitration (filing 1) filed by plaintiff, GGNSC Omaha Oak Grove, LLC, d/b/a Golden LivingCenter of Sorensen ("GLS"). The Court has considered the parties' briefs (filings 3, 8, and 11) and indexes of evidence (filings 2, 9, and 10), and finds, for the reasons discussed below, that GLS's motion should be denied.

## I. PROCEDURAL HISTORY AND FEDERAL JURISDICTION

      The present motion arises from a case brought against GLS that is pending in Nebraska state court. Defendant Ivan Payich filed suit as special administrator for the estate of his mother, Nada Payich, against GLS and 20 John Doe defendants. Filing 2-2. The state court complaint alleges that while Nada was a resident at a skilled nursing facility owned and operated by GLS, she suffered physical and mental injuries as a result of negligent care and treatment. Filing 2-2, at ¶¶4–6, 27–35. The complaint also alleges that defendants John Does 1–10 (contractors, subcontractors, and employees of GLS), and John Does 11–20 (the owners and administrators of GLS), were negligent in their care and treatment of Nada. *Id.*

      In response, GLS filed the present motion, seeking an order from this Court compelling arbitration pursuant to § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Defendant contends that an arbitration provision included in the admission agreement through which Nada was admitted to the skilled nursing facility controls any disputes regarding Nada's care at the facility.

This case began with a different caption, with GLS and John Does 1–20 listed as defendants, and Ivan (as special administrator for the estate of Nada) listed as plaintiff. *See* filing 1, at 1. This mirrored the caption of the state court action. Filing 2-2, at 1. The apparent presence of the John Doe defendants raised the question whether the Court had subject matter jurisdiction.

Section 4 of the FAA provides that any party may file a motion in federal district court to compel arbitration, but it does not provide an independent jurisdictional basis for filing in federal court. *Express Scripts, Inc. v. Aegon Direct Marketing Services, Inc.*, 516 F.3d 695, 699 (8th Cir. 2008). Instead, § 4 provides that petitions may be filed in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4.

GLS invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332(a), asserting that the amount in controversy exceeds $75,000 and GLS and Ivan (as legal representative of Nada's estate) are citizens of different states. (Filing 1, at ¶ 4.) As the party invoking the Court's jurisdiction, GLS must show, by a preponderance of the evidence, facts supporting jurisdiction. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). The Court previously found that the amount in controversy exceeds $75,000 and that diversity exists between GLS and Ivan. *See* filing 14, at 2–3.

But several courts have held that John Doe defendants destroy original diversity jurisdiction,[1] because courts cannot simply presume diversity is present and the proponent of jurisdiction cannot prove diversity without some indication of the Does' citizenship. *See, e.g., Controlled Env't Sys. v. Sun Process Co., Inc.*, 936 F. Supp. 520, 522 (N.D. Ill. 1996); *see also, Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997); *McMann v. Doe*, 460 F. Supp. 2d 259, 263–65 (D. Mass. 2006). Based on those holdings, the Court entered an order to show cause why the case should not be dismissed for lack of subject matter jurisdiction. Filing 14.

GLS responded with a motion to amend the complaint (filings 15 and 16) and a response to the Court's show cause order (filing 17). GLS stated that listing itself and the John Doe defendants in the caption occurred by mistake. Filing 15, at 1–2. The Court agrees. This proceeding is separate from the underlying state court suit, and GLS, as the party seeking relief in the form of a petition under § 4 of the FAA, is more properly labeled the

---

[1] The presence of "fictitious defendants" does not have this effect on *removal* diversity jurisdiction. *See,* 28 U.S.C. § 1441(b)(1); *Meng v. Schwartz*, 305 F. Supp. 2d 49, 55–56 (D. D.C. 2004); filing 14, at 3–4.

plaintiff. And the John Doe defendants are not parties to this proceeding. Accordingly, the Court granted GLS's motion to amend the caption (filing 15), realigning the parties and removing the John Doe defendants. Filing 18.

The presence of the John Doe defendants in the *state court* action is not relevant to the Court's diversity analysis. *See* filing 17. In proceedings under § 4 of the FAA, diversity is determined by the citizenship of the parties named in the proceedings before the district court (plus any indispensable parties who must be joined pursuant to Fed. R. Civ. P. 19).[2] *Northport Health Services of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010). In other words, courts do not "look through" to the citizenship of all the parties present in the underlying state court case. *Id.* Because GLS is diverse from Ivan, the Court has subject matter jurisdiction, and may now turn to the merits of GLS's motion to compel arbitration.

## II. FACTUAL BACKGROUND

On September 3, 2009, Nada executed a "Durable Power of Attorney for Health Care" (the "POA") naming Ivan her "Attorney-In-Fact for health care." Filing 2-1, at 3–4. The POA is printed on the form provided for in Neb. Rev. Stat. § 30-3408, which is part of Nebraska's Health Care Power of Attorney statutes, Neb. Rev. Stat. §§ 30-3401 to 30-3432. The POA was a so-called "springing" power of attorney, authorizing Ivan to make "health care decisions" for Nada if she was determined to be incapable of doing so herself. Filing 2-1, at 3. The POA was signed by Nada and notarized. Filing 2-1, at 3–4. The notary affirmed that Nada "appear[ed] in sound mind" when the POA was executed. Filing 2-1, at 4.

One day later, on September 4, 2009, Nada was admitted to Golden LivingCenter of Sorensen, a skilled nursing facility in Omaha, Nebraska. Filing 2-1, at 1. As part of the admissions process, Ivan signed an Admission Agreement (filing 10-1, at 3–23) and a separate Arbitration Agreement (filing 2-1, at 5–7). Filing 2-1, at 2.

The Admission Agreement sets forth the rights and responsibilities of the "Resident" (Nada). At the bottom of the first page following the table of contents, the Admission Agreement states: "IV. ARBITRATION - The Resident acknowledges that disputes under this Agreement may be submitted to arbitration, if the Resident elects to do so, by signing a separate agreement executed between the parties. *Agreeing to arbitration is not a condition of admission or continuing care*." Filing 10-1, at 8–9 (emphasis supplied).

---

[2] Neither party has suggested that the John Doe defendants are indispensable parties to this proceeding.

The Admission Agreement was signed by Ivan, but not by Nada. Ivan signed on the line marked "Legal Representative." Filing 10-1, at 22. Above his signature, the page reads, "If the Legal Representative signs the Agreement, check the Type of Legal Representative (below)." Filing 10-1, at 22. Several types of representatives are listed, including durable power of attorney for health care, guardian, and agent acting under general power of attorney. Filing 10-1, at 22. None were checked. The line for the resident's signature is blank. Filing 10-1, at 22.

The Arbitration Agreement was also signed only by Ivan. Filing 2-1, at 5–7. The Arbitration Agreement provides, in relevant part:

> This Arbitration Agreement is executed by GLC – Sorensen (the "Facility") and Nada Payich ("Resident" or "Resident's Authorized Representative", hereafter collectively referred to as "Resident") in conjunction with . . . [the Admission Agreement]. The parties to this Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction involving interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration . . . and not by a lawsuit or resort to court process.

Filing 2-1, at 5.

On the second page is a disclaimer, in bold print and capital letters, warning that by signing the agreement, the parties "waiv[e] their constitutional right to have any claim decided in a court of law before a judge and a jury." Filing 2-1, at 6 (capitalization removed). Below this, the form repeats the disclaimer found in the Admission Agreement: that agreeing to arbitration was not a precondition to admission to the facility. Filing 2-1, at 6. At the bottom, on the line marked "Resident" is Ivan's signature. Filing 2-1, at 6. Below this is printed, "[i]f the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and an authorized representative is signing this provision, complete the following . . . ." Filing 2-1, at 6. Below this is a line for the signature of the "Authorized representative," which is blank. Filing 2-1, at 6. Both

agreements were also signed by Mary Keller, a GLS representative. Filing 2-1, at 7; filing 10-1, at 21, 23.

Ivan has submitted evidence bearing on Nada's competence when she was admitted to the facility. Ivan states that he visited his mother often in September 2009 and was familiar with her mental condition. Filing 9, at 3. He was present when she signed the POA on September 3, and when she was admitted on September 4, and states that she appeared to be capable of making decisions for herself on both occasions. Filing 9, at 3. Ivan also claims that Nada was physically capable of signing documents on September 4. Filing 9, at 4. Ivan avers that, as of September 5, his mother had never been determined to be incompetent or incapable of making medical or legal decisions by any court, nor was he aware of any such limitations. Filing 9, at 4.

Ivan has also submitted copies of records from the facility: a "record of admission" and "recreation statement." Filing 9, at 5–7. Nada's primary language is listed as "Other," and she moved to the United States in 1959. Filing 9, at 5–6. The records do not reveal her English proficiency. The "admitting diagnosis" for Nada lists only physical ailments, and reveals no mental infirmities. Filing 9, at 5. Under "Observed Functional Status," the recreation statement shows that Nada had "fair or poor short-term recall," "fair long-term recall," and "fair decision making ability." Filing 9, at 6. Her reading and writing ability are listed as "fair." Filing 9, at 6. The form also states that she was hard of hearing. Filing 9, at 7.

In short, there is no evidence that Nada was incapable of making health care decisions, or deciding whether to sign the Admission and Arbitration Agreements. It is not clear why Ivan signed these agreements, nor is it clear where Nada was when this was occurring. There is also no evidence that Nada was aware of the Arbitration Agreement.

### III. ANALYSIS

GLS argues that the Arbitration Agreement signed by Ivan was binding upon Nada (and therefore upon her estate), and moves the Court to compel arbitration pursuant to § 4 of the FAA. The Court finds that Nada was not bound by the Arbitration Agreement, and GLS's motion (filing 1) will be denied.

**A.   The Federal Arbitration Act**

The purpose of the FAA is to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible. *Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008). Although the FAA establishes a federal policy favoring arbitration agreements, arbitration is a

matter of contract, and a party cannot be required to submit to arbitration any dispute which it has not so agreed to submit. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Whether parties have agreed to submit a particular dispute to arbitration is typically an issue for courts, as opposed to arbitrators, to decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855 (2010). This includes disputes as to contract formation, *Id.* at 2855–56, or whether a non-signatory is bound by an arbitration clause. *Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 841 n.5 (8th Cir. 2003). And GLS does not argue in this case that the arbitrability of the suit should itself be decided by an arbitrator.

The FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). However, courts employ ordinary principles of state contract law to determine the threshold question whether an enforceable arbitration agreement exists. *Id.* Nebraska law therefore controls the issues of contract law in this case.

GLS argues that Nada was bound by the Arbitration Agreement, even though she did not sign it, because Ivan had authority to sign for Nada pursuant to the POA. Alternatively, GLS contends that Nada should be bound as a third-party beneficiary. The Court finds that both of these arguments are without merit and that Nada was not bound by the Arbitration Agreement. Therefore, her estate is also free of the Arbitration Agreement, and GLS's motion will be denied.

### B.   Nebraska's Health Care Power of Attorney Statutes

GLS first argues that the POA authorized Ivan to sign the Arbitration Agreement on his mother's behalf. The POA authorized Ivan to make "health care decisions" for Nada if she was determined to be incapable of doing so herself. Filing 2-1, at 3. This argument fails for the simple reason that when the agreement was signed, no such determination had been made.

The POA was printed on a form provided for in Neb. Rev. Stat. § 30-3408, part of Nebraska's Health Care Power of Attorney statutes. Neb. Rev. Stat. §§ 30-3401 to 30-3432. The form creates a "springing" power of attorney, such that any authority conferred by the POA would only commence upon a determination, by a physician, that Nada was incapable of making health care decisions. §§ 30-3411 and 30-3412. There is no evidence that such a determination was ever made in this case. Rather, the evidence shows that Nada was competent and able to make her own decisions. *See* filing 9, at 1–7. The Court finds that the POA did not authorize Ivan to sign the Arbitration Agreement.

### C.   Third-Party Beneficiary Doctrine

GLS next argues that Nada was bound by the Arbitration Agreement under the third-party beneficiary doctrine. The Court finds this doctrine inapplicable to the present case, because there was no agreement between GLS and Ivan to which Nada could have been a third-party beneficiary.

An individual is a third-party beneficiary to a contract if the contract was intended to directly (as opposed to incidentally) benefit the individual. *[Podraza v. New Century Physicians of Nebraska, LLC, 789 N.W.2d 260, 266–67 (Neb. 2010)](.)*. A third-party beneficiary can sue to enforce the contract. *[Haakinson & Beaty Co. v. Inland Ins. Co., 344 N.W.2d 454, 458–59 (Neb. 1984)](.)*. But if the third party seeks to gain the benefits of the contract, it will also be bound by its obligations. *[Id.](.)*

There are problems with GLS's argument. First, Ivan is not suing to enforce any contract. Instead, he asserts only tort claims against GLS. *See* Filing [2-2](.). Second, and more fundamentally, there is no agreement to which Nada could have been a third-party beneficiary. GLS contends that Ivan signed the Arbitration Agreement "on behalf of Nada." Filing [11](.), at 1, 7. This misses the point: if Ivan had possessed the authority to sign the agreement on behalf of Nada, it would be unnecessary to bind Nada to the agreement indirectly, as a third-party beneficiary. Rather, she would have been a direct party to the contract, bound by her representative's signature.

If there had been an agreement between GLS and Ivan himself, a different result might obtain. But GLS does not argue that such an agreement existed. Ivan did not sign for himself, but as his mother's representative. Therefore, there is no agreement at issue to which Nada could have been a third-party beneficiary. *See [Dickerson v. Longoria, 995 A.2d 721, 741–42 (Md. 2010)](.)*. And as the Court explains next, Ivan had no authority to sign the Arbitration Agreement on behalf of Nada.

Generally, whether an agency relationship exists is a factual question. *[Koricic v. Beverly Enterprises-Nebraska, Inc., 773 N.W.2d 145, 149 (Neb. 2009)](.)*. So is the scope of an agent's authority. *[Id.](.)* An "agent" is a person authorized by the principal to act on the principal's behalf and under the principal's control. *[Id.](.)* For an agency relationship to arise, the principal must manifest assent to the agent acting on the principal's behalf and subject to the principal's control. *[Id.](.)* The only evidence that Nada authorized Ivan to act on her behalf was the POA. But any authority under the POA had not commenced when Ivan signed the agreements. In short, there is no evidence that Ivan was Nada's agent.

Even if Ivan was Nada's agent for some purposes, there is no evidence that he had the authority—actual or apparent—to sign the Arbitration

Agreement on Nada's behalf. "Actual authority" is that which the principal expressly grants to the agent or that the principal consents to. *Id.* Again, there is no evidence Nada expressly granted Ivan the authority to sign anything.

"Apparent authority" is authority that is conferred when the principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon an agent's apparent authority. *Id.* at 151. Apparent authority only exists when the third person's belief is traceable to the principal's manifestations, and cannot be established by the agent's conduct. *Id.* at 152. The record before the Court does not reveal whether Nada was present when the agreements were signed, or whether she was even aware of the Arbitration Agreement. Nothing in the record suggests that a reasonable person should have expected an arbitration agreement to be included with admission documents for a nursing home. *Id*. Nor could GLS reasonably have taken Nada's assent to the Arbitration Agreement for granted, because its own forms expressly stated that agreeing to arbitration was not a condition of admission.

GLS states in a conclusory manner that Nada "claimed the benefits of the Admission Agreement and thus manifested her assent to the admission." Filing 11, at 6. GLS does not explain how this translates into assent to the Arbitration Agreement. GLS appears to be arguing that Nada ratified the agreements purportedly made on her behalf. The evidence does not support this theory. Essential to a valid and effective ratification of an unauthorized act is the principal's complete knowledge of the unauthorized act and all matters related to it. *Western Fertilizer and Cordage Co., Inc. v. BRG, Inc.*, 424 N.W.2d 588, 595 (Neb. 1988). There is no evidence that Nada knew of the Arbitration Agreement. GLS provides no evidence or argument as to how Nada could have ratified the Arbitration Agreement simply by remaining in the facility.

GLS cites a number of cases from other jurisdictions (mostly Mississippi) that have used the third-party beneficiary doctrine to compel non-signatories to arbitrate in circumstances similar to the case at hand. *See, e.g.*, *Forest Hill Nursing Center Inc. v. McFarlan*, 995 So.2d 775 (Miss. Ct. App. 2008); *Trinity Mission Health & Rehabilitation of Clinton v. Estate of Scott ex rel. Johnson*, 19 So.3d 735, 739–40 (Miss. Ct. App. 2008); *Trinity Mission of Clinton, LLC v. Barber*, 988 So. 2d 910, 918 (Miss. Ct. App. 2007); *see also*, *Cook v. GGNSC Ripley, LLC*, 786 F. Supp. 2d 1166, 1171–72 (N.D. Miss. 2011); *Alterra Healthcare Corp. v. Estate of Linton*, 953 So.2d 574, 579 (Fla. App. 2007). But in none of these cases did the courts address whether a contract existed in the first place.

*Barber* provides a typical example of the reasoning in these cases. In *Barber*, a son admitted his mother to a nursing home and signed the admission agreement, which included an arbitration provision. *Barber*, 988 So.2d at 914. The son did not have any authority to sign on her behalf. *Id.* at 915–18. Nevertheless, the court found that the mother's estate was bound by the arbitration clause, as the mother was a third-party beneficiary of the admission agreement. *Id.* 918–19. The court reasoned that she was a third-party beneficiary because the point of the admission agreement was to provide for her care. *Id.* That is correct insofar as describing the definition of a third-party beneficiary. But the court never explained how there was a valid agreement to which the mother could have been a third-party beneficiary. Apparently, the court assumed that there existed a valid agreement between the son and the nursing home.

The reasoning of these cases is not persuasive. Before there can be a third-party beneficiary, there must be a contract. *See Longoria*, 995 A.2d at 741–42. The Court finds the third-party beneficiary doctrine inapplicable to this case. Ivan is not suing to enforce any contract, and GLS has not argued that any contract was formed between itself and Ivan. Nor was an agreement to arbitrate formed by Ivan acting on Nada's behalf.

Nada was not bound by the Arbitration Agreement, nor is her estate. Therefore, the Court finds that GLS's motion to compel arbitration should be denied. Accordingly,

IT IS ORDERED:

1. Plaintiff GLS's motion to compel arbitration (filing 1) is denied;

2. Judgment is entered in favor of defendant Ivan Payich, as special administrator for the estate of Nada Payich, and against plaintiff GLS, and this case is dismissed.

3. A separate judgment will be entered.

Dated this 5th day of June, 2012.

BY THE COURT:

*[signature: John M. Gerrard]*

John M. Gerrard
United States District Judge

- 9 -